UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUIS GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 09 C 5598 |
| vs. | ) | |
| | ) | Judge Feinerman |
| CITY OF CHICAGO, NICHOLAS HERTKO, M.J. | ) | |
| BROSNAN, and M.G. SCALETTA, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Plaintiff Luis Garcia brought this action under 42 U.S.C. § 1983 and Illinois law against the City of Chicago and Chicago police officers Nicholas Hertko, M.J. Brosnan, and M.G. Scaletta, alleging various wrongs related to his arrest and state court prosecution for assault. Defendants have moved for summary judgment on all of Garcia's claims. Defendants are granted summary judgment on the federal conspiracy, search and seizure, and excessive force claims, and on the state law intentional infliction of emotional distress claim. Summary judgment is granted to Scaletta and Brown, and is denied to Hertko, on the federal false imprisonment claim and the state law malicious prosecution claim.

### Background

The following facts are stated as favorably to Garcia as the record and Local Rule 56.1 permit. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 675-76 (7th Cir. 2007). On December 31, 2007, Garcia and Officer Hertko—who was off-duty and in plain clothes—were both driving on North Elston Avenue in Chicago. Doc. 82 at ¶¶ 5-6. According to Garcia, Hertko failed to stop at a stop sign while talking on his cell phone, causing Garcia to brake

suddenly and swerve. Hertko then tried to force Garcia's vehicle off the road and began yelling,

screaming, and swearing at him. Doc. 83-1 at 2-3. In response, Garcia asked Hertko whether he

realized what he had done, explaining that he had nearly caused a crash. *Id*. at 3. Hertko

followed Garcia and recorded his license plate number. Doc. 86 at ¶ 3. Hertko then entered the

oncoming traffic lane and began screaming at Garcia, warning that he had "better watch his back

because [Garcia] was going to pay now." Doc. 83-1 at 3-4.

Garcia stopped at a stop sign and Hertko pulled up behind him. Doc. 82 at ¶ 9. Garcia

exited his vehicle and photographed Hertko's license plate. *Id*. at ¶¶ 12, 16; Doc. 86 at ¶ 4.

Hertko then exited his vehicle, "rushed" Garcia, and began yelling at him. Doc. 86 at ¶ 5; Doc.

83-1 at 4-5. Hertko identified himself as a police officer and displayed his badge. Doc. 82 at ¶

14. Hertko and Garcia were out of their vehicles for less than five minutes. *Id*. at ¶ 15; Doc. 83-

1 at 6.

After the incident, Hertko drove to the Sixteenth District Police Station, where he was

stationed, and filed a complaint. Doc. 82 at ¶ 17. Officer Samuel Greco, a non-party, took the

complaint and created a general offense case report. *Id*. at ¶ 19. The report said:

> Offender pulled up next to victim and yelled, 'You cut me off mother
> fucker, fuck you, I'm going to kick your ass.' ... Offender jumped out of his
> auto and approached victim's auto with his right hand in his right pocket.
> Victim, fearing for his safety, announced his office and displayed his police
> star and identification.

*Id*. at ¶ 20; Doc. 73-3 at 2-3. The report included a physical description of Garcia and identified

his license plate number. Doc. 82 at ¶ 22; Doc. 73-3 at 2-3. The report was signed by Greco and

approved by the desk sergeant. Doc. 82 at ¶ 21. When he reported for duty that evening, Hertko

informed Sergeant Scaletta, his tactical team sergeant, of the incident with Garcia. *Id*. at ¶¶ 23,

33, 35.

On January 2, 2008, after assigning himself to Hertko's complaint, Scaletta reviewed the case report. *Id*. at ¶¶ 37-38. Scaletta went to the address associated with the license plate number identified in the report; upon arriving, he saw a vehicle with that plate number, went to the front door, and rang the door bell. *Id*. at ¶¶ 40, 47; Doc. 83-1 at 9. Garcia answered and identified himself as the vehicle's owner. Doc. 82 at ¶¶ 48-49. Garcia also acknowledged that he was involved in an incident on December 31. Doc. 83-1 at 9. At some point Scaletta informed Garcia that he was under arrest and called for back-up assistance. Doc. 77 at ¶ 53; Doc. 82 at ¶ 52. Officer Brosnan arrived to assist Scaletta. Doc. 82 at ¶ 56. Scaletta told Brosnan to arrest Garcia, at which point Brosnan and his partner placed Garcia in handcuffs. *Id*. at ¶¶ 59-60. The handcuffs were "super" uncomfortable, causing Garcia pain and redness, and Garcia complained to the officers that the cuffs were hurting him and cutting off his circulation. *Id*. at ¶¶ 40, 61; Doc. 83-1 at 11-12; Doc. 86 at ¶ 40. Garcia did not seek treatment for injuries allegedly sustained during the arrest. Doc. 82 at ¶ 79.

Garcia was transported to the Sixteenth District Police Station, where Scaletta questioned him. *Id*. at ¶ 66; Doc. 83-1 at 12-13. Garcia was released at 9:05 a.m. on January 3, 2008. Doc. 82 at ¶ 69. Prior to the release, Hertko signed a misdemeanor complaint charging Garcia with simple assault in violation of 720 ILCS 5/12-1(a). *Id*. at ¶¶ 70-71; Doc. 73-9 at 2. The complaint stated that Garcia told Hertko "I'm going to kick your ass" and that Hertko was placed in reasonable apprehension of receiving a battery. Doc. 82 at ¶ 72; Doc. 73-9 at 2.

On September 29, 2008, the criminal case against Garcia was set for a rule to show cause hearing in the Circuit Court of Cook County. Doc 83-22 at 1, 3. Despite having notice of the hearing, Hertko did not appear. Doc. 82 at ¶ 76; Doc. 86 at ¶ 33. Hertko had missed the previous court date as well. Doc. 86 at ¶ 35. The state court denied the prosecution's motion for

a continuance and, on the prosecutor's motion, the charges against Garcia were dismissed with leave to reinstate ("SOL"). Doc. 82 at ¶¶ 77-78. In granting the motion, the court stated: "Motion State SOL. Defendant demands trial. Your case is dismissed." Doc. 83-22 at 8.

Garcia filed this action on December 5, 2009. The amended complaint brings § 1983 claims for conspiracy to deprive Garcia of his constitutional rights, illegal search and seizure, false imprisonment, and excessive force, and state law claims for malicious prosecution and intentional infliction of emotional distress. Doc. 6. The amended complaint also brings a state law indemnification claim against the City, seeking a declaration that it is liable for any judgment Garcia obtains against the individual defendants.

## Discussion

### I.      Section 1983 Conspiracy Claim

Garcia's § 1983 conspiracy claim alleges that Defendants conspired to falsely arrest him. To survive summary judgment, a conspiracy plaintiff must adduce evidence showing: "(1) [the existence of] an express or implied agreement among defendants to deprive plaintiff of his … constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988); *see also Horan v. City of Chi.*, 2010 WL 2836729, at *7 (N.D. Ill. July 16, 2010); *Wells v. City of Chi.*, 2009 WL 528307, at *7 (N.D. Ill. Feb. 25, 2009). It is necessary to discuss only the first element—an express or implied agreement among Defendants.

A plaintiff "may demonstrate that Defendants reached an agreement by establishing that Defendants [understood] the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [their] part to further them." *Kelly v. Chambers*, 2009 WL 765267, at *3 (N.D. Ill. Mar. 23, 2009) (alterations in original) (quoting *Jones v. City of Chi.*,

856 F.2d 985, 992 (7th Cir. 1988)) (internal quotation marks omitted). If the alleged agreement was not overt, the plaintiff must point to acts that are "sufficient to raise the inference of mutual understanding (*i.e.*, the acts performed by the members of a conspiracy are unlikely to have been undertaken without an agreement)." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (quoting *Kunik v. Racine Cnty., Wis.*, 946 F.2d 1574, 1580-81 (7th Cir. 1991)) (internal quotation marks omitted). "Although a conspiracy certainly may be established by circumstantial evidence, … such evidence cannot be speculative," *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003), and "a conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen*, 218 F.3d at 718 (internal quotation marks omitted). Pertinent here, "the existence of numerous phone calls between alleged conspirators, standing alone, merely proves that [the individuals] remained in contact … . To assert that the calls are evidence of a conspiracy is simply speculation." *Williams*, 342 F.3d at 785 (alterations in original) (quoting *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002)) (internal quotation marks omitted).

Garcia's argument that Defendants agreed to falsely arrest him does not rise above a speculative level. The heart of Garcia's claim lies in the "numerous phone communications" between Scaletta and Hertko that "occurred both immediately prior to and immediately after the arrest." Doc. 81 at 7. The record shows that Scaletta and Hertko communicated via telephone before and after the arrest. Doc. 86 at ¶¶ 21-22. The phone calls themselves, however, are not sufficient evidence of an agreement or conspiracy. *See Williams*, 342 F.3d at 785. And Garcia's attempts to mine the record for additional evidence that would permit a reasonable jury to find an agreement fail to persuade.

First, Garcia argues an agreement and conspiracy can be shown from the fact that Hertko and Scaletta falsely denied communicating with each other before and after the arrest.  Doc. 81 at 7.  The argument's premise, of course, is that Hertko and Scaletta *actually* denied communicating with each other at those times.  To support this premise, Garcia's brief cites only ¶ 21 of his Local Rule 56.1(b)(3)(C) response.  *Ibid*.  That paragraph, however, does not indicate that Hertko and Scaletta denied communicating with each other.  Instead, it states only that Scaletta telephoned Hertko before the arrest.  Doc. 83 at ¶ 21 ("On January 2, 20[08], Defendant Scaletta telephoned Defendant Hertko at 8:58 p.m. and 9:06 p.m., immediately prior to the arrest of Plaintiff Garcia.").  There is nothing about a denial by either Hertko or Scaletta.

Although the court need not look beyond the specific Local Rule 56.1 material cited in Garcia's brief for the proposition that Hertko and Scaletta denied communicating, the court will indulge Garcia and do so.  The one paragraph in Garcia's Local Rule 56.1(b)(3)(C) response that refers to the alleged denial is ¶ 17, which asserts: "Defendant Hertko denies speaking to any officers on the phone."  Doc. 83 at ¶ 17.  To support this assertion, Garcia cites the following passages from Hertko's deposition:

> Q.    From the time that the incident began with Mr. Garcia and the time that you were at the police station, did you make any phone calls to any other police officers?
>
> A.    Not that I recall, no.
>
> Q.    Is it possible that you did?
>
> A.    Like I said, I don't recall if I had or not.  I went to the station and I made a report.
>
> *    *    *
>
> Q.    After you left the police station, did you talk to anyone else about the incident?

A.    Not that I recall.

Q.    So you don't remember talking to anyone else about what happened
        with Mr. Garcia?

A.    No.

Doc. 83-2 at 8.  The transcript shows that Hertko did not *deny* that he had communicated with

Scaletta; instead, he testified that *did not remember* whether he had done so.  Hertko's failure to

remember is evidence only of his failure to remember, not of a denial.  *See Chi. United Indus.,*

*Ltd. v. City of Chi.*, __ F.3d __, 2012 WL 202783, at *5 (7th Cir. Jan. 24, 2012) (holding that a

witness's testimony that he "*does not recall* ordering anything from CUI … was not enough to

raise a triable issue") (internal quotation mark omitted); *Rodriguez v. Kane Cnty. Sheriff's Merit*

*Comm'n*, 2012 WL 280360, at *5 (N.D. Ill. Jan. 31, 2012).  And Garcia's Local Rule 56.1(b)

materials do not contend that *Scaletta* denied communicating with Hertko.  Because Garcia

adduced no evidence that Hertko and Scaletta falsely denied communicating with each other

before and after the arrest, it is unnecessary to decide whether such evidence would suffice to

forestall summary judgment on the conspiracy claim.

    Second, Garcia argues that evidence of a conspiracy can be found in "objective facts

borne out by phone records and police reports."  Doc. 81 at 7.  Most of the allegedly "objective

facts" are not supported by the cited record material, and those that have record support do not

suggest the existence of a conspiracy.  For example, Garcia's Local Rule 56.1(b)(3)(C) response

asserts that "[o]n January 2, 2008, Defendant Scaletta … put himself on a robbery mission that

does not exist according to official department records."  Doc. 83 at ¶ 18.  This statement is

belied by the only official department record Garcia cites, the Watch Commander Log, which

refers to a "Joint Robbery Mission."  Doc. 83-24 at 1.  Garcia's Local Rule 56.1(b)(3)(C)

-7-

response also asserts that Hertko did not inform Kimberly Schroeder, his co-worker and girlfriend, of the alleged assault by Garcia. Doc. 83 at ¶ 13. However, the deposition testimony cited by Garcia to support this assertion simply reflects that Hertko could not remember calling any police officers regarding the incident. Doc. 83-2 at 8. And even if Hertko did not tell Schroeder about the incident, that would not be evidence of an agreement among Hertko, Scaletta, and Brosnan to deprive Garcia of his constitutional rights. *See Amundsen*, 218 F.3d at 718.

Garcia also relies on evidence that Hertko and Scaletta received and/or made calls to the same telephone numbers in the days following the December 31 incident. Doc. 83 at ¶¶ 16, 23; Doc. 83-23 at 4, 8. All that these phone calls prove, however, is that Scaletta and Hertko may have been in touch with the same people, a fact that is hardly surprising given that they work for the same police district. Garcia then cites evidence that Scaletta threatened Garcia, refused to give his name, and did not identify himself as a police officer during the arrest. Doc. 83 at ¶ 28-29; Doc. 83-1 at 9-11. But Garcia provides no reason, and the court cannot conjure one on its own, why this evidence is suggestive of a conspiracy; after all, Scaletta was the officer who subsequently questioned Garcia at the station, and thus was not attempting to hide his identity or involvement in the arrest. Finally, the *only* evidence Garcia relies on to implicate Brosnan in the alleged conspiracy is the fact that he was with Scaletta when Garcia was arrested. A reasonable jury could not infer from this meager fact that there was a mutual understanding among Brosnan, Scaletta, and Hertko to deprive Garcia of his constitutional rights.

In sum, many of Garcia's arguments are not supported by the record evidence, and the arguments that have such support would not permit a reasonable jury to find that Defendants engaged in acts that they were "unlikely to have ... undertaken without an agreement."

*Amundsen*, 218 F.3d at 718 (internal quotation marks omitted). Because Garcia's conspiracy

allegations are purely speculative, Defendants are entitled to summary judgment on the

conspiracy claim.

## II. Section 1983 False Imprisonment Claim

Garcia's false imprisonment claim alleges that Defendants caused him to be arrested and

imprisoned without probable cause. Doc. 6 at 4. The factual allegations supporting the false

imprisonment claim against Hertko differ from those supporting the claim against Scaletta and

Brosnan. Likewise, Defendants' arguments for why Hertko is entitled to summary judgment

differ from their arguments as to Scaletta and Brosnan. The claim against Scaletta and Brosnan

therefore will be considered separately from the claim against Hertko.

### A. Defendants Scaletta and Brosnan

Scaletta and Brosnan seek qualified immunity on the false imprisonment claim. Doc. 72

at 12. "The doctrine of qualified immunity protects government officials from liability for civil

damages when their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th

Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When confronted with a

claim for qualified immunity, [the court] must address two questions: whether the plaintiff's

allegations make out a deprivation of a constitutional right, and whether the right was clearly

established at the time of defendant's alleged misconduct." *Ibid.*

With respect to the first question, Scaletta and Brosnan argue that Garcia's allegations do

not make out a false imprisonment claim because they had probable cause to arrest him. *See*

*Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 485 (7th Cir. 2011) ("[I]f an officer has probable

cause to arrest a suspect … , there is no Fourth Amendment violation.") (citing *Devenpeck v.*

-9-

*Alford*, 543 U.S. 146, 153-55 (2004)); *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)

("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police

officers for wrongful arrest, false imprisonment, or malicious prosecution."). "A police officer

has probable cause to arrest if a reasonable person would believe, based on the facts and

circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d

703, 707 (7th Cir. 2009). As a general rule, probable cause can be established based on

> [t]he complaint of a single witness or putative victim … unless the
> complaint would lead a reasonable officer to be suspicious, in which case
> the officer has a further duty to investigate. … And in crediting the
> complaint of a reasonably believable witness or putative victim, the police
> are under no constitutional obligation to exclude all suggestions that the
> witness or victim is not telling the truth.

*Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) (citations omitted); *see also*

*McBride*, 576 F.3d at 707 ("Normally, an officer may base a determination of probable cause on

information from the putative victim if the officer reasonably believes that the victim is telling

the truth."); *Neiman v. Keane*, 232 F.3d 577, 581 (7th Cir. 2000) ("[c]omplaints from putative

victims about alleged crimes generally establish probable cause"). "Fellow law enforcement

personnel are among the witnesses whose accounts the arresting officer may rely upon."

*Holmes*, 511 F.3d at 680.

Given the record, no reasonable jury could find that Scaletta and Brosnan lacked

probable cause to arrest Garcia. Garcia was arrested for assault, which Illinois law defines as

follows: "A person commits an assault when, without lawful authority, he or she knowingly

engages in conduct which places another in reasonable apprehension of receiving a battery."

720 ILCS 5/12-1(a). The case report indisputably stated:

> Offender pulled up next to victim and yelled, 'You cut me off mother
> fucker, fuck you, I'm going to kick your ass.' ... Offender jumped out of his

> auto and approached victim's auto with his right hand in his right pocket.
> Victim, fearing for his safety, announced his office and displayed his police
> star and identification.

Doc. 82 at ¶ 20; Doc. 73-3 at 2-3. The vehicle listed in the report indisputably was parked in front of Garcia's residence, and Garcia indisputably identified himself as the vehicle's owner and as having been involved in the December 31 incident with Hertko. Doc. 82 at ¶¶ 47, 49, 50. Even if Hertko falsified the report, there is no evidence that Scaletta and Brosnan *knew* about it. In sum, because Scaletta and Brosnan were entitled to credit Hertko's allegations, they had probable cause to arrest Garcia for assault, which defeats Garcia's false imprisonment claim against them on the merits. *See Holmes*, 511 F.3d at 680. This holding renders it unnecessary to address whether the right allegedly violated was clearly established at the time of the arrest.

### B. Defendant Hertko

Unlike Scaletta and Brosnan, Hertko does not argue that qualified immunity entitles him to summary judgment on the false imprisonment claim. Doc. 72 at 12 (limiting qualified immunity argument on false imprisonment claim to Scaletta and Brosnan). Hertko argues only that he cannot have violated Garcia's constitutional right to be free from false imprisonment because he was not present during the investigation of the December 31 incident or at the arrest. Doc. 72 at 4. Hertko's argument rests on the following principle: "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (emphasis omitted) (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)) (internal quotation marks omitted). Garcia responds that this principle does not protect Hertko because it was Hertko who falsified the case report and complaint, thereby causing Garcia to be arrested without probable cause.

-11-

It is undisputed that Hertko's complaint *caused* Garcia's arrest. The dispositive question is whether Hertko lied about what happened during the December 31 incident and thus knew at the time he signed the complaint that there was no probable cause to arrest Garcia for assault. *See McBride*, 576 F.3d at 707 (probable cause is "based on the facts and circumstances *known at the time*") (emphasis added); *Juriss v. McGowen*, 957 F.2d 345, 350-51 (7th Cir. 1992) ("where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause," they can be liable for false arrest under § 1983; "this is particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body"); *Olson v. Tyler*, 825 F.2d 1116, 1118 (7th Cir. 1987) ("if an officer seeking a warrant purposefully or recklessly withholds facts that could negate probable cause, the officer may be liable for violating the victim's civil rights"). That question, which turns on a "swearing contest" between Hertko and Garcia, cannot be resolved on summary judgment. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) ("The court may not ... decide which testimony is more credible."); *see Holmes*, 511 F.3d at 685 ("The existence of probable cause to support the two charges that [the defendant] initiated depends on whether [the plaintiff] actually pushed [the defendant] and resisted [the defendant's] attempt to arrest him. The factfinder must resolve whether it is [the plaintiff] or [the defendant] who is telling the truth in this respect."). It follows that the record evidence, viewed in Garcia's favor, "make[s] out" a false imprisonment claim against Hertko. *McAllister*, 615 F.3d at 881.

Although Hertko does not contend that the right in question was not clearly established when he committed his alleged misconduct, it bears mention that any such argument would have failed. It was clearly established in December 2007 that the Fourth Amendment prohibits a law enforcement officer from knowingly leveling false charges in a case report or criminal

complaint. *See Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) ("According to the plaintiffs, the police officers fabricated a police report in order to justify their arrests. A reasonable officer would have understood that what he was doing violated their right to be free from unreasonable seizure."); *Treece v. City of Naperville*, 1998 WL 142391, at *11 ("falsifying police reports and fabricating charges violated Treece's rights under the Fourth Amendment"). Accordingly, Hertko is not entitled to summary judgment on the false imprisonment claim.

## III.     Section 1983 Excessive Force Claim

The amended complaint alleges that Defendants "used an unreasonable and excessive amount of force" against Garcia. Doc. 6 at 4. Garcia concedes that Hertko is entitled to summary judgment on the excessive force claim. Doc. 81 at 6. Scaletta and Brosnan seek qualified immunity on that claim.

Because Scaletta and Brosnan seek qualified immunity, the court first addresses whether the evidence would permit a reasonable jury to find that Scaletta and Brosnan violated Garcia's constitutional right to be free from excessive force. *See McAllister*, 615 F.3d at 881. Garcia alleges that during his arrest, the officers applied handcuffs too tightly, cutting off his circulation and causing him pain and redness. Garcia further alleges that he repeatedly complained that the handcuffs were hurting him and cutting off his circulation. On the record, however, it is undisputed that Garcia did not complain about the handcuffs while in the police car or at the police station. It likewise is undisputed that the only physical injuries Garcia allegedly sustained were pain and redness.

The Fourth Amendment permits an officer to use reasonable force to effectuate a lawful arrest. *See Stainback v. Dixon*, 569 F.3d 767, 771-72 (7th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). To determine the reasonableness of the force used, the court

-13-

examines the facts as a reasonable officer on the scene would have viewed them, recognizing

"that officers often need to make split-second judgments based on rapidly developing events."

*Id*. at 772 (citing *Holmes*, 511 F.3d at 685). The degree of force that is reasonable varies based

on "the circumstances surrounding the arrest, including 'the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight.'" *Ibid*. (quoting *Graham*,

490 U.S. at 396). "Not every push or shove, even if it may later seem unnecessary in the peace

of a judge's chambers, violates the Fourth Amendment." *Sow v. Fortville Police Dep't*, 636 F.3d

293, 304 (7th Cir. 2011) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).

Simple discomfort from the use of handcuffs cannot support an excessive force claim. *See ibid*.;

*Stainback*, 569 F.3d at 773; *Tibbs v. City of Chi.*, 469 F.3d 661, 666 (7th Cir. 2006). But an

excessive force claim based on handcuffing can survive summary judgment where the plaintiff

adduces evidence of significant pain resulting from handcuffing under circumstances where the

need for restraint was light. *See Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003); *Herzog v.

Vill. of Winnetka*, 309 F.3d 1041, 1043-44 (7th Cir. 2002).

     Under the circumstances presented here—Garcia was being arrested for assaulting an off-

duty police officer—it cannot be said that the need for restraint was light. Also pertinent is the

fact that Garcia stopped complaining about the handcuffs once he was in the police car, did not

complain about the handcuffs when he arrived at the police station, did not report any physical

injury or request medical treatment while in custody, and sought no medical treatment upon his

release. Although a plaintiff need not suffer a physical injury to maintain an excessive force

claim, *see Lanigan v. Vill. of East Hazel Crest*, 110 F.3d 467, 470 n.3 (7th Cir. 1997), the

undisputed facts, taken together, would preclude a reasonable jury from finding that Garcia's

handcuffing was an objectively unreasonable use of force. *See Sow*, 636 F.3d at 304 (summary judgment was appropriate where the plaintiff complained once to the arresting officer that his handcuffs were too tight, did not complain of any injury when taken to jail, and did not receive any treatment resulting from the use of the handcuffs); *Tibbs*, 469 F.3d at 666 (summary judgment was appropriate where the plaintiff complained once about the handcuffs, gave no indication of the degree of his pain, experienced minimal injury, and sought no medical care). Because the evidence does not make out a Fourth Amendment violation, there is no need to address whether the right allegedly violated was clearly established at the time of the arrest.

One note before leaving the excessive force claim. Garcia testified at his deposition that the arresting officers slammed him against the wall before placing him in handcuffs. Doc. 83-1 at 11. Garcia refers to this testimony in his Local Rule 56.1(b)(3)(C) response, asserting that he "was slammed up against the wall prior to being handcuffed." Doc. 82 at ¶ 61. Garcia's opposition brief, however, does not even *mention* this testimony, let along argue that it supports the excessive force claim. Doc. 81. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (quoting *Liberles v. Cnty. of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)) (internal quotation marks omitted). Under this rule, Garcia forfeited any argument that the alleged wall-slamming constitutes excessive force. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [the argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in ... the district court."); *see also Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011); *Russell v. Harms*, 397 F.3d 458, 465-66 (7th Cir. 2005).

-15-

IV.     **State Law Malicious Prosecution Claim**

Under Illinois law, a malicious prosecution plaintiff must prove that: "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (emphasis omitted); *see also Mosley v. City of Chi.*, 614 F.3d 391, 399 (7th Cir. 2010). The absence of evidence sufficient to support any element bars the claim. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Defendants argue that Garcia's claim fails on both the favorable termination and probable cause elements. Those elements are considered in turn.

A.      **Favorable Termination**

"[A] malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick*, 662 N.E.2d at 1242. It is undisputed that the criminal proceedings against Garcia were terminated following the expiration of the speedy trial period after the state court SOL'd the criminal assault charge. *See generally Lopez v. City of Chi.*, 2011 WL 1557757, at *1-2 (N.D. Ill. Apr. 25, 2011) (explaining the termination of criminal proceedings following an SOL). To determine whether a termination is favorable, courts examine the circumstances, not the form or title, of the disposition. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (Ill. 1997). Termination is not indicative of innocence, and therefore is not favorable, if the dismissal "is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or

-16-

impracticability of bringing the accused to trial." *Swick*, 662 N.E.2d at 1243; *see Horan v. City of Chi.*, 2010 WL 2836729, at *8 (N.D. Ill. July 16, 2010) ("criminal proceeding was not terminated in a manner that indicated plaintiff's innocence … [where] the narcotics found in plaintiff's apartment were discovered during an improper search and could not be used as evidence against plaintiff"). But "[w]here the disposition is indicative of a lack of probable cause to bring the earlier case, it will constitute a 'favorable termination' for purposes of asserting a malicious prosecution claim." *Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656 (Ill. App. 1999).

Where, as here, a charge is terminated following an SOL, innocence may be indicated. In *Velez*, for example, criminal proceedings against Velez—predicated on Avis's allegedly malicious criminal complaint—were twice SOL'd at Avis's request. The charges ultimately were terminated after Velez demanded trial and the speedy trial period elapsed. In Velez's subsequent civil case, the Appellate Court of Illinois held that the termination of criminal proceedings under those circumstances might indicate innocence. As the court explained, Avis

> had ample opportunity to prosecute the case, and, indeed, had been called
> upon to do so by the plaintiff's demand for immediate trial. Yet, Avis twice
> refused to proceed to trial on the charges. In our view these
> [circumstances] indicate that the disposition was premised upon a lack of
> probable cause and was indicative of the innocence of the plaintiff.

721 N.E.2d at 656-57. Under the principles set forth in *Velez*, where a malicious prosecution plaintiff presents evidence that the prosecutor abandoned a charge because the complaining witness failed to appear for trial, a reasonable jury could conclude that probable cause was lacking and therefore that the dismissal was indicative of innocence. *See Lopez*, 2011 WL 1557757, at *3; *Edwards v. Vill. of Park Forest*, 2009 WL 2588882, at *6 (N.D. Ill. Aug. 20, 2009) ("a reasonable jury could infer that the lack of probable cause was itself the reason for the

officers' failure to appear"); *Mahaffey v. Misner*, 2009 WL 2392087, at *3 (N.D. Ill. July 31,

2009) (failure of complaining witness to appear "supports a finding of a favorable termination"

and defeats a summary judgment motion); *Woods v. Clay*, 2005 WL 43239, at *15 (N.D. Ill. Jan.

10, 2005) (genuine issue of material fact existed "as to whether the charges were terminated in

plaintiffs' favor [when] Officer Clay failed to appear in court, and, as a consequence, those

charges were [SOL'd]"); *see also Petrovic v. City of Chi.*, 2008 WL 4286954, at *10 (N.D. Ill.

Sept. 16, 2008) (where the criminal charge was dismissed *nolle prosequi* "because [the

prosecutor's] complaining witness refused to testify[, a] rational jury could find that the *nolle

prosequi* indicated [the plaintiff's] innocence").

Here, there is nothing of record to suggest that the prosecutor's SOL motion was the

result of compromise, misconduct, mercy, new criminal proceedings, or the impossibility of

bringing Garcia to trial. Instead, it is undisputed that the prosecutor struck the assault charge

because Hertko failed to appear. The prosecutor explained: "Officer was notified for today's

date. We have every indication that notification was received. Based on that, we're respectfully

requesting a continuance." Doc. 83-22 at 7; *see also* Doc. 86 at ¶ 32 (admitting that the charges

against Garcia were SOL'd because Hertko did not appear in court). Hertko's failure to appear

could lead a reasonable jury to conclude that the prosecutor's decision to SOL the assault charge

was indicative of Garcia's innocence. Garcia therefore has adduced evidence sufficient to

satisfy the second element of his malicious prosecution claim.

The cases cited by Defendants do not undermine this conclusion. Defendants invoke

*Prieto v. Lopez*, 2010 WL 2574227 (N.D. Ill. June 23, 2010), and *O'Neill v. O'Callaghan*, 2002

WL 31133188 (N.D. Ill. Sept. 25, 2002), for the proposition that a complaining witness's failure

to appear in court cannot indicate a criminal defendant's innocence. *O'Neill* explained that a no-

show witness is not indicative of innocence if the witness is not the complaining witness and was not subpoenaed to appear in court. 2002 WL 31133188, at *9. Here, by contrast, the no-show witness (Hertko) is the complaining witness. Doc. 83-21 at 2 (listing Hertko as the complainant). In *Prieto*, after the plaintiff abandoned his malicious prosecution claim during summary judgment briefing, the court noted in dicta that the criminal proceedings were dismissed because the complaining witness "apparently" failed to appear. 2010 WL 2574227, at *6. The plaintiff did not present any evidence regarding the complaining witness's actions or why the charge ultimately was terminated. As such, the court concluded that the mere fact that "essential witnesses failed to show up in court," without more, could not support a malicious prosecution claim at trial. *Id.* at *7. That is not the situation presented here.

### B.      Probable Cause

As under the Fourth Amendment, probable cause for purposes of a malicious prosecution claim "is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Gauger v. Hendle*, 954 N.E.2d 307, 329-30 (Ill. App. 2011) (emphasis omitted) (quoting *Fabiano v. City Palos Hills*, 784 N.E.2d 258, 266 (Ill. App. 2002)). "The existence of probable cause … is determined by looking to what the defendants knew at the time of subscribing a criminal complaint." *Id.* at 329 (quoting *Porter v. City of Chi.*, 912 N.E.2d 1262, 1273 (Ill. App. 2009)) (internal quotation marks omitted). "It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Sang Ken Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. 2006).

As shown above in discussing Garcia's false imprisonment claim, Scaletta and Brosnan had probable cause to believe that Garcia committed assault. Hertko, however, did not.

Accordingly, Scaletta and Brosnan are entitled to summary judgment on the malicious prosecution claim, while Hertko is not.

## V.  Section 1983 Search and Seizure Claim and State Law Intentional Infliction of Emotional Distress Claim

The amended complaint purports to state a § 1983 claim for "illegal search and seizure." Doc. 6 at 4.  Defendants seek summary judgment on that claim.  On the first page of his opposition brief, Garcia recharacterizes the claim as one for "illegal seizure"—no allegation is made of any illegal search—and fails to substantively address the "illegal seizure" claim in the rest of the brief.  Doc. 81 at 1.  As noted above, "a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."  *Domka*, 523 F.3d at 783 (quoting *Liberles*, 709 F.2d at 1126).  Therefore, to the extent (if any) that the amended complaint's "illegal search and seizure" claim is distinct from the false imprisonment claim, Garcia has forfeited the search and seizure claim.  *See Chi. Reg'l Council of Carpenters*, 644 F.3d at 356; *Witte*, 434 F.3d at 1038; *Russell*, 397 F.3d at 465-66.

The amended complaint also purports to bring a state law intentional infliction of emotional distress claim.  Doc. 6 at 8-9.  Defendants seek summary judgment on that claim, arguing that Garcia cannot prove the necessary elements.  Garcia's opposition brief does not substantively address the emotional distress claim, resulting in a forfeiture.  *See Domka*, 523 F.3d at 783.

## Conclusion

Defendants are granted summary judgment on the conspiracy, search and seizure, excessive force, and emotional distress claims.  Scaletta and Brosnan are granted summary judgment on the false imprisonment and malicious prosecution claims.  This case will proceed to

trial against Hertko on the false imprisonment and malicious prosecution claims. Scaletta and

Brosnan are dismissed as party defendants.

February 23, 2012

_____

United States District Judge